UNITED STATES DISTRICT COURT.
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KATHRYN MAUCH,<br><br>    Plaintiff,<br><br>-against-<br><br>KANTAR LLC and IVONNE SAMANIEGO,<br><br>    Defendants. | Case No.:<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff KATHRYN MAUCH ("Ms. Mauch" or "Plaintiff"), by and through her attorneys, FISHER TAUBENFELD LLP, alleges against KANTAR LLC ("Kantar" or "Corporate Defendant") and IVONNE SAMANIEGO ("Defendant Samaniego" or "Individual Defendant") (collectively "Defendants") as follows:

## NATURE OF THE ACTION

1. This action arises from Defendants' discriminatory and retaliatory conduct against Plaintiff based on her gender and/or pregnancy.

2. Plaintiff brings this action pursuant to Title VII of the Civil Rights of 1964, 42 U.S.C. § 2000 *et seq.*, as amended by the Pregnancy Discrimination Act of 1978, 42 U.S.C. 1981A ("Title VII"), and New York City Human Rights Law, codified in the Administrative Code of the City of New York §§ 8-101 *et seq.* ("NYCHRL" or "City Law"), to remedy Defendants' failure to accommodate her disability and pregnancy and Defendants' unlawful termination of her employment based on her pregnancy and/or in retaliation for her requesting reasonable accommodations. Defendants committed these unlawful acts intentionally and willfully, with knowledge that they were violating Title VII and City Law and that Plaintiff would be economically injured.

3. Legal relief is sought pursuant to the ADAAA, Title VII and City Law.

## JURISDICTION AND VENUE

4. Jurisdiction of this Court is proper under 28 U.S.C. § 1331, which confers original jurisdiction upon this Court for actions arising under the laws of the United States.

5. Supplemental jurisdiction over Plaintiff's City Law claims is conferred by 28 U.S.C. § 1367(a). Plaintiff was employed by Defendants in the City of New York.

6. Venue is proper in this District under 28 U.S.C. § 1367(b) and (c) in that Defendant conducts business in this District and the acts and/or omissions giving rise to the claims alleged herein took place in this District.

7. Plaintiff has satisfied all jurisdictional prerequisites under Title VII. Prior to filing this Complaint, Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC), and on March 1, 2024 received a Notice of Right to Sue from the EEOC, thereby giving Plaintiff the right to proceed in federal court and conferring jurisdiction upon this Court.

8. Pursuant to §8-502(c) of the City Law, within ten (10) days of filing this Complaint, Plaintiff shall serve a copy of this Complaint on the New York City Commission on Human Rights and the Corporation Counsel of the City of New York.

## THE PARTIES

### *Plaintiff*

9. Ms. Mauch is an adult individual who resides in the State of New York.

10. Ms. Mauch was employed by Corporate Defendant from June 7, 2021 until February 16, 2023.

11. Ms. Mauch was at all times material hereto an "employee" within the meaning of Title VII and City Law.

### *Defendants*

12. Upon information and belief, Corporate Defendant is a corporation organized and existing under the laws of the State of New York, which maintains a principal place of business at 3 World Trade Center,175 Greenwich St, 35th Floor, New York, NY, 10007.

13. At all relevant times hereto, Corporate Defendant has continuously been doing business in the City of New York and has continuously employed 15 or more employees for each working day in each of the twenty (20) or more calendar weeks in the current and preceding calendar year and accordingly is an "employer" within the definition of Title VII.

14. At all relevant times hereto, Corporate Defendant has continuously employed (4) or more people and accordingly is an employer within the definition of City Law.

15. Defendant Samaniego was at all relevant times the Company's chief HR officer.

16. Defendant Samaniego supervised Plaintiff and had the power to control the terms and conditions of Plaintiff's work, including the power to hire and fire her.

17. Defendant Samaniego is an employer individually liable under City Law for discrimination against Plaintiff, given that she had power to do more than carry out personnel decisions made by others.

18. Defendant Samaniego recommended, participated in, and/or carried out the adverse actions against Plaintiff and aided and abetted in the discriminatory acts against Plaintiff.

**FACTUAL ALLEGATIONS**

19. Plaintiff worked as an operations coordinator in the Company's Human Resources department from June 7, 2021 until February 16, 2023.

20. Throughout Plaintiff's employment, she carried out her job duties with diligence and care, consistently meeting or exceeding the Company's legitimate performance expectations.

21. Plaintiff's performance reviews from peers and supervisors were consistently positive, and she was never informed of any issues or areas where she needed improvement.

22. Plaintiff had been encouraged by her managers to take classes at Cornell towards an HR certificate and to apply for an internal mentorship program.

23. However, throughout Plaintiff's employment with Defendants, Defendants exhibited a clear pattern of preferential treatment for male employees, specifically by Defendant Samaniego, the Company's chief HR officer.

24. Ms. Samaniego would never take meetings with Plaintiff and refused to communicate with her directly, even when acting as Plaintiff's direct manager.

25. Plaintiff was forced to try to speak with Ms. Samaniego through employees who were able to get meetings with her and to whom she would respond.

26. Ms. Samaniego passed over Plaintiff for a pay increase for two years in a row with no explanation.

27. Ms. Samaniego would frequently request that flowers or gifts be sent to employees who were bereaved or experienced other life events, such as a wedding gift for Mr. Kuhlman. When Plaintiff's brother passed away, she did not receive any notice or comment from Ms. Samaniego.

28. Plaintiff noticed that after Ms. Samaniego took over the department, she was not being added to meetings where she would normally be present, and that much of her work was being reassigned to her male coworker, Anthony Kuhlman.

29. A project based in Chicago which had been assigned to Plaintiff in March 2022 was taken away and given to Mr. Kuhlman, with no explanation for the change.

30. Ms. Samaniego worked well with Plaintiff's male coworkers, frequently assigned projects to them, and expressed a clear preference for Mr. Kuhlman to take on the Chicago project instead of Plaintiff.

31. Plaintiff asked her supervisor, Brittany Maul, why Kuhlman had been assigned, and also complained about being left off of meetings and communication breakdowns.

32. Plaintiff expressed that the reassignment felt unfair and inequitable and that Mr. Kuhlman was treated better than she was because of his gender.

33. Ms. Maul said she would speak to Ms. Samaniego about the issues, but Plaintiff never heard back in response to her complaints.

34. Plaintiff witnessed similarly situated male employees receive promotions before her and her female coworkers.

35. Where men received pay increases and title changes for taking on additional tasks, women employees of Corporate Defendant were expected to take on additional work without more pay or title changes.

36. Plaintiff witnessed that supervisor Heather Bruder was promoted to take over a supervisor role from a man without any change in her pay. After Ms. Bruder left the company, her role was split between two other women, neither of whom, upon information and belief, received any increase in their pay.

37. Plaintiff noted that exceptions were made more frequently for men than for women from other countries to receive approval for their work visas and receive promotions associated to relocating.

38. Women were promoted less frequently than men, and where international transfers for men were easy, they were more difficult for women employees to receive.

39. Plaintiff's coworker Andrew Flynn was promoted to a position for which Plaintiff had applied despite him having less relevant experience and being hired after Plaintiff. Plaintiff did not even receive an interview for the role and was never provided an explanation or any indication of what she needed to do to improve and be considered for promotion.

40. Plaintiff later learned that the recruiter was directly asked by the hiring manager, Kelly Ward, not even to contact her about the role.

*Plaintiff's IVF Treatment and Termination*

41. In January 2023, Plaintiff informed Brittney Maul that she was undergoing IVF treatments.

42. Heather Bruder was also aware of Plaintiff's IVF treatments.

43. Maul approved and encouraged Plaintiff's IVF treatments.

44. Plaintiff's IVF treatments were separately approved by Win Fertility, an IVF add-on to the company health plan for which Plaintiff had to interview to receive extra coverage.

45. Plaintiff's medical requests had been authorized such that she should not have had to pay anything out of pocket for the second round of her treatment.

46. Plaintiff was terminated in February 2023, only a few weeks after alerting Kantar that she was about to undergo expensive IVF treatment.

47. Kantar informed Plaintiff that her role was "no longer needed," despite her male coworker Mr. Kuhlman remaining employed in the same role.

48. Plaintiff had a fertility-related surgery scheduled for March 1, which Defendants were fully aware of; however, Defendants terminated her benefits the day before her surgery. Plaintiff was therefore terminated before she could engage in a second round of fertility treatments, which had already been approved.

49.     46. Upon information and belief, Defendant Samaniego was aware of the timing of Plaintiff's fertility treatments.

50.     Plaintiff experienced and is continuing to experience significant emotional and financial distress as a result of the Defendants' discrimination and retaliatory treatment of her, and was blindsided that Defendants would terminate her when they were well aware of the approved medical treatments which she was in the middle of receiving.

**FIRST CAUSE OF ACTION**
**(Discrimination on Basis of Gender/Pregnancy**
**in Violation of Title VII)**

51.     Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

52.     By the acts and practices described above, the Corporate Defendant discriminated against Plaintiff by creating a hostile work environment and terminating her employment on the basis of her gender/pregnancy, in violation of Title VII.

53.     The Corporate Defendant knew that her actions constituted unlawful discrimination and/or acted with malice or reckless disregard for Plaintiff's statutorily protected rights.

54.     Plaintiff has suffered and will continue to suffer irreparable injury, monetary damages, mental anguish, humiliation, and damage to her reputation as a proximate result of the Corporate Defendant's discriminatory practices, unless and until this Court grants the relief hereinafter described.

**SECOND CAUSE OF ACTION**
**(Discrimination on Basis of Gender/Pregnancy**
**in Violation of City Law)**

55. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

56. By the acts and practices described above, Defendants discriminated against Plaintiff on the basis of her gender/pregnancy by creating a hostile work environment and terminating her employment in violation of City Law.

57. Defendants knew that their actions constituted unlawful discrimination and/or acted with malice or reckless disregard for Plaintiff's statutorily protected rights.

58. Plaintiff has suffered and will continue to suffer irreparable injury, monetary damages, mental anguish, humiliation, and damage to her reputation as a proximate result of Defendant's discriminatory practices, unless and until this Court grants the relief hereinafter described.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendants awarding:

A. Compensatory, punitive, mental anguish, pain and suffering damages sustained as a result of Defendants' discriminatory and retaliatory conduct;

B. Prejudgment Interest;

C. Back Pay, Front Pay, and damages for all employment benefits Plaintiff would have received but for the discriminatory and retaliatory acts and practices of Defendants;

D. Plaintiff's costs and reasonable attorneys' fees; and

E. Any relief the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial on all claims for relief to which she has a right to a jury trial.

Dated: May 28, 2024
      New York, New York

                                  Respectfully submitted,

                                  _____

                                  Michael Taubenfeld, Esq.
                                  FISHER TAUBENFELD LLP
                                  225 Broadway, Suite 1700
                                  New York, New York 10007
                                  Phone: (212) 571-0700
                                  *ATTORNEYS FOR PLAINTIFF*